UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| **JAMES WYATT, et al.,** ] | |
| ] | |
| **Plaintiffs,** ] | |
| ] | |
| v. ] | Case No.: 7:23-cv-703-ACA |
| ] | |
| **CMH MANUFACTURING, INC.,** ] | |
| **et al.,** ] | |
| ] | |
| **Defendants.** ] | |

## MEMORANDUM OPINION

Plaintiff James Wyatt and his daughter, Plaintiff Savanah Wyatt, brought this action in the Circuit Court of Tuscaloosa County, Alabama against Defendants CMH Manufacturing, Inc., Warrior Wholesale Homes, Inc., and various fictitious defendants, asserting claims of product liability, breach of contract, breach of warranty, and violation of the Magnuson-Moss Act, 15 U.S.C. § 2310(d)(1). (Doc. 1-1). The Wyatts allege that in February 2017, they purchased a mobile home from Warrior that was made by CMH Manufacturing. (Doc. 1-1 at 4 ¶ 11; *id.* at 6, 8–9). Because of a defective roof, the home leaked water and became uninhabitable, forcing the Wyatts to move out of the home in December 2021. (*Id.* at 4 ¶ 14; *id.* at 7).

After CMH Manufacturing removed the case to federal court, CMH Manufacturing and Warrior each moved for summary judgment (docs. 35–36) and to strike expert evidence submitted by the Wyatts (docs. 50, 52). The court **WILL GRANT IN PART** and **WILL DENY IN PART** the motions for summary judgment. The court **WILL GRANT** CMH Manufacturing's and Warrior's motions for summary judgment as to the Magnuson-Moss Act claims against them (docs. 35–36), and **WILL ENTER SUMMARY JUDGMENT** in favor of CMH Manufacturing and Warrior as to those claims. To the extent the Wyatts assert Magnuson-Moss Act claims against fictitious defendants, the court **WILL DISMISS** those claims **WITHOUT PREJUDICE** for failure to sufficiently describe such fictitious defendants.

Because the court resolves the only claims over which it has original jurisdiction, the court **WILL DECLINE** to exercise supplemental jurisdiction over the Wyatts' state law claims against CMH Manufacturing, Warrior, and the fictitious defendants, and **WILL REMAND** those claims. The court **WILL DENY AS MOOT** CMH Manufacturing's and Warrior's motions for summary judgment on the state law claims. (Docs. 35–36).

Finally, because the grounds on which the court resolves this case do not depend on evidence from any experts, the court **WILL DENY AS MOOT** the motions to strike. (Docs. 50, 52).

## I.  BACKGROUND

In deciding a motion for summary judgment, the court is "required to view the evidence and all factual inferences therefrom in the light most favorable to [the Wyatts], and to resolve all reasonable doubts about the facts in [their] favor." *Patterson v. Ga. Pac., LLC*, 38 F.4th 1336, 1341 (11th Cir. 2022) (quotation marks omitted; alterations accepted). Where the parties have presented evidence creating a dispute of fact, the court's description of the facts adopts the version most favorable to the non-movant. *See id.*; *see also Cantu v. City of Dothan*, 974 F.3d 1217, 1222 (11th Cir. 2020) ("The 'facts' at the summary judgment stage are not necessarily the true, historical facts; they may not even be what a jury at trial would, or will, determine to be the facts.").

In January 2017, Mr. Wyatt signed a contract to purchase a mobile home from Warrior that was manufactured by CMH Manufacturing. (Doc. 35-3 at 5; doc. 36-1 at 8). Warrior delivered and installed the mobile home for the Wyatts on February 17, 2017. (Doc. 35-3 at 3; doc. 36-1 at 3). CMH Manufacturing provided a limited one-year manufacturer's warranty on the mobile home.[1] (Doc. 35-2 at 168; doc. 36-

---

[1] Although the Wyatts dispute whether the handbook containing the warranty was inside the mobile home at the time Warrior delivered it to them, they do not dispute the existence of a warranty or its limitations. (*Compare* doc. 37 at 5–6 ¶¶ 3–6, *with* doc. 48 at 3–4 ¶¶ 3–6; *see* doc. 35-5 at 41, 43 (Mr. Wyatt testifying that Warrior told him there was a "full factory warranty" and that he searched for information about that warranty online); doc. 36-5 at 41, 43 (same); doc. 35-3 at 5 (purchase agreement with Warrior stating that the home had a "full factory warranty"); doc. 36-1 at 8 (same)).

1 at 44). CMH's warranty guaranteed that the home was "free under normal use from manufacturing defects in materials or workmanship," but this guarantee was limited to one year from the date of "original retail delivery." (*Id.*). After expiration, the warranty provided an additional fifteen days for consumers to give written notice to CMH Manufacturing or Warrior of covered defects in the mobile home. (*Id.*). CMH Manufacturing's warranty was the only warranty expressly made on the mobile home. (*See* doc. 35-2 at 169; doc. 36-1 at 45; doc. 38 at 6 ¶ 18; doc. 47 at 3; doc. 37 at 5–6 ¶¶ 3–4; doc. 48 at 3 ¶¶ 3–4 (disputing that the Wyatts received a written copy of the warranty, but not disputing the existence of the warranty)). The express warranty limited any implied warranties to the same duration of the express warranty: one year. (Doc. 35-2 at 169; doc. 36-1 at 45).

Because the mobile home was delivered by Warrior—the retailer—on February 17, 2017 (doc. 35-3 at 3; doc. 36-1 at 3), the warranty expired on February 17, 2018, and the Wyatts had until March 4, 2018 to notify CMH Manufacturing or Warrior of issues covered by the warranty (doc. 35-2 at 168; doc. 36-1 at 44). Mr. Wyatt requested service under CMH Manufacturing's warranty several times during the warranty period. (Doc. 35-4 at 31–32; doc. 36-2 at 31–32; doc. 41-10 at 59; doc. 41-11 at 67; doc. 42-10 at 59, 70; doc 42-11 at 67). At one point during the warranty period, Mr. Wyatt requested repairs of the leaking kitchen sink, dishwasher, and toilets. (Doc 35-4 at 31; doc. 36-2 at 31; doc. 35-5 at 44; doc. 36-5

4

at 44). Mr. Wyatt testified that CMH Manufacturing and/or Warrior completed the repairs to his satisfaction, including those repairs to the leaking appliances. (Doc. 35-4 at 31–32, 35; doc. 36-2 at 31–32, 35). Mr. Wyatt did not notice any problems in the home between the last service visit and late 2018. (Doc. 35-4 at 32; doc. 36-2 at 32).

In late 2018 after some rainstorms, the Wyatts first noticed water intrusion and staining in the home. (Doc. 35-4 at 32; doc. 36-2 at 32; doc. 35-7 at 10; doc. 36-10 at 10). Mr. Wyatt contacted his insurance company about the leaks, which investigated and paid for repairs to the walls, ceilings, and floors. (Doc. 35-9 at 7; doc. 35-4 at 32; doc. 36-2 at 32). These repairs failed, and the leaks continued, at which point Mr. Wyatt paid someone else to repair the roof. (Doc. 35-4 at 33–34; doc. 36-2 at 33–34). These repairs also failed, and the roof continued to leak. (Doc. 35-4 at 34; doc. 36-1 at 34).

As early as November 2019, Mr. Wyatt contacted CMH Manufacturing and Warrior about the leaks. (*Id.*). Warrior eventually sent someone to inspect the water intrusion, but Warrior could not stop the leaks. (Doc. 35-4 at 35; doc. 36-2 at 35). CMH Manufacturing did not repair the home. (Doc. 35-5 at 45; doc. 36-5 at 45). Two years later, the Wyatts moved out of the mobile home because of the water intrusion. (Doc. 35-4 at 27; doc. 36-2 at 27).

## II.   DISCUSSION

In deciding a motion for summary judgment, the court must determine whether, accepting the evidence in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "[T]here is a genuine issue of material fact if the nonmoving party has produced evidence such that a reasonable factfinder could return a verdict in its favor." *Looney v. Moore*, 886 F.3d 1058, 1062 (11th Cir. 2018) (quotation marks omitted).

### 1.   Magnuson-Moss Act Claims Against CMH Manufacturing and Warrior (Count Six)

The Wyatts assert Magnuson-Moss Act claims against CMH Manufacturing and Warrior for failing to fix the leaks in the mobile home despite unspecified implied and express warranties on the home.[2] ("Count Six"; doc. 1-1 at 9–10). "The

---

[2] Although Count Six references both express and implied warranties (doc. 1-1 at 10), CMH Manufacturing and Warrior incorrectly believed the Magnuson-Moss Act claims related only to breaches of implied warranty. (*See e.g.*, doc. 38 at 30 (citing 15 U.S.C. § 2308(a)); doc. 37 at 25–26); *but see* 15 U.S.C. § 2310(d)(1)(B) (creating a cause of action for breaches of "written" and "implied" warranties). Consequently, CMH Manufacturing and Warrior did not move for summary judgment on the Magnuson-Moss Act breach of express warranty claims (*see* doc. 38 at 30–34; doc. 37 at 25–27), despite defending against the Wyatts' state law breach of express warranty claims (*see* doc. 38 at 27–30; doc. 37 at 17–22). Because Magnuson-Moss Act claims are also based on state law, *see Brown v. Electrolux Home Prods., Inc.*, 817 F.3d 1225, 1231 (11th Cir. 2016), the court recognized that any arguments in support of summary judgment on the Magnuson-Moss Act breach of express warranty claims would be identical to the arguments made in support of summary judgment on the state law breach of express warranty claims. After giving the parties notice and a reasonable time to respond (*see* docs. 55–56), the court will exercise its discretion under Federal Rule 56(f) to consider the evidence and arguments related to the state law breach of express warranty claims in connection with the Magnuson-Moss Act breach of express warranty claims.

Magnuson-Moss Act merely supplements state-law implied [and express] warranties by affording a federal remedy for their breach." *Tershakovec v. Ford Motor Co., Inc.*, 79 F.4th 1299, 1315 (11th Cir. 2023) (quotation marks omitted; alterations accepted); *see* 15 U.S.C. § 2310(d)(1)(B). The parties do not dispute that Alabama law governs the Magnuson-Moss Act breach of implied and express warranty claims. (*See* doc. 37 at 25; doc. 48 at 14; doc. 38 at 29–30; doc. 47 at 28).

Alabama law allows warrantors to limit express warranty coverage in duration and "method by which the warranty holder notifies the [warrantor] of a defect covered by the warranty." *Turner v. Westhampton Ct., L.L.C.*, 903 So. 2d 82, 91 (Ala. 2004). In *Turner*, the Alabama Supreme Court affirmed the trial court's entry of summary judgment in favor of the defendant because the express warranty "require[d] that the purchaser give notice of the defect within one year of the commencement of the warranty" and the plaintiffs "failed to provide any evidence indicating that they provided the required notice within that period." *Id.*

Similarly, the Magnuson-Moss Act allows warrantors to limit implied warranties "in duration to the duration of a written warranty of reasonable duration, if such limitation is conscionable and is set forth in clear and unmistakable language and prominently displayed on the face of the warranty." 15 U.S.C. § 2308(b). A plaintiff may rebut a warranty's limitations by arguing that the warranty "failed of its essential purpose" and providing evidence "that the warrantor refused to repair

7

or replace the [malfunctioning component] in accordance with the warranty," or failed to repair it within a reasonable time. *Ex parte Miller*, 693 So. 2d 1372, 1377 (Ala. 1997) (quotation marks omitted).

CMH Manufacturing and Warrior contend that given the lawful limitations on the implied and express warranties, the Wyatts' breach of warranty claims fail because all warranties had expired by the time Mr. Wyatt gave CMH Manufacturing and Warrior notice about the leaking roof. (*See* doc. 37 at 18–20, 25–26; doc. 38 at 28–33). The Wyatts do not argue that the limitations on implied and express warranties are unreasonable or unlawful. (*See generally* docs. 47–48, 56). Instead, the Wyatts argue, without providing any citations to evidence, that they provided sufficient notice of the "water damage within six months of their taking occupancy of the house" to CMH Manufacturing and Warrior. (Doc. 47 at 27; doc. 48 at 11 (quotation marks omitted); *see also* doc. 49 at 5; doc. 56 at 7). After reviewing the evidence, the court disagrees.

It is undisputed that the only express warranty on the home was CMH Manufacturing's one-year warranty, which limited itself *and* any implied warranties to one year. (*See* doc. 35-2 at 168–69; doc. 36-1 at 44–45; doc. 38 at 6 ¶ 18–19; doc. 47 at 3 (not disputing the express warranty's one-year limit on all implied warranties); doc. 37 at 5–6 ¶¶ 3–4; doc. 48 at 3 ¶¶ 3–4 (disputing that the Wyatts received a written copy of the warranty, but not disputing the existence of

8

the warranty or its limitations)). It is also undisputed that during the warranty period, Mr. Wyatt requested that CMH Manufacturing and/or Warrior make several repairs, including repairs to leaking appliances. (Doc. 35-4 at 31; doc. 36-2 at 31; doc. 35-5 at 44–45; doc. 36-5 at 44–45).

But these repairs were completed to Mr. Wyatt's total satisfaction. (Doc. 35-4 at 35 (Mr. Wyatt's testimony that the warranty repairs during the first six months were "absolutely" timely completed); doc. 36-2 at 35 (same); *see also* doc. 35-5 at 44–45; doc. 36-5 at 44–45). Thus, to the extent those leaking appliances caused "water damage" during the warranty period (doc. 48 at 11; *see also* doc. 49 at 5; doc. 56 at 7), Mr. Wyatt's own testimony precludes any possibility "that the warrantor refused to repair or replace the [malfunctioning component] in accordance with the warranty," or failed to repair it within a reasonable time. *Ex parte Miller*, 693 So. 2d at 1377. The only evidence in the record is that CMH Manufacturing and/or Warrior effectively repaired all issues Mr. Wyatt raised during the warranty period.

In addition, it is undisputed that the Wyatts first noticed major leaks in late 2018, months after the express and implied warranties expired. (Doc. 35-4 at 32; doc. 36-2 at 32; doc. 35-2 at 168–69; doc. 36-1 at 44–45; doc. 35-7 at 10; doc. 36-10 at 10). And Mr. Wyatt did not contact CMH Manufacturing or Warrior about the leaking roof until November 2019. (Doc. 25-4 at 34; doc. 36-2 at 34). Therefore, the discovery of the roof leak and notice to CMH Manufacturing and/or Warrior

9

occurred well after all warranties on the home expired. (*See* doc. 35-3 at 3; doc. 36-1 at 3, 44; doc. 35-2 at 168–69).

Because there is no evidence that the Wyatts gave CMH Manufacturing or Warrior notice of the roof defect prior to the expirations of the implied and express warranties, the Wyatts have not created a dispute of material fact as to whether CMH Manufacturing or Warrior breached any warranties. Accordingly, the court **WILL GRANT** CMH Manufacturing's and Warrior's motions and **WILL ENTER SUMMARY JUDGMENT** in their favor as to Count Six.

> 2. Magnuson-Moss Act Claims Against Fictitious Defendants (Count Six)

Generally, "fictitious-party pleading is not permitted in federal court." *Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010). An exception exists for claims that "adequately describe[] the person to be sued so that the person c[an] be identified for service." *Dean v. Barber*, 951 F.2d 1210, 1215 n.6 (11th Cir. 1992). This description must be "so specific" that using the defendant's proper name is "at the very worst, surplusage." *Richardson*, 598 F.3d at 738 (quotation marks omitted).

It is unclear whether the Wyatts bring their Magnuson-Moss Act claims against fictitious defendants, but because Count Six discusses "Defendants," generally, the court will assume they do. (Doc. 1-1 at 9–10). The complaint's descriptions of fictitious defendants are insufficient. The complaint describes at least eight fictitious defendants ("whether one or more"), using only general terms to

describe the individuals, partnerships, or corporations who manufactured, designed or contributed to the design of, assembled or contributed to the assembly of, distributed, sold, placed into the stream of commerce, and removed or failed to properly install the roof system of the mobile home. (*Id.* at 3–4 ¶¶ 3–10). These descriptions of fictitious defendants as individuals, partnerships, or corporations are inadequate to identify those defendants for service. *See Dean*, 951 F.2d at 1215 n.6; *compare* Fed. R. Civ. P. 4(e) (serving an individual), *with* Fed. R. Civ. P. 4(h) (serving a corporation, partnership, or association). And the Wyatts never moved to amend their complaint to include the identities or more detailed descriptions of the fictitious defendants.

Accordingly, to the extent the Wyatts assert Magnuson-Moss Act claims against fictitious defendants, the court **WILL DISMISS** Count Six against those defendants **WITHOUT PREJUDICE**.

    4. State Claims Against CMH Manufacturing, Warrior, and Fictitious Defendants (Counts One Through Five)

The Wyatts also bring various state law claims against all defendants. ("Counts One, Two, Three, Four, and Five"; doc. 1-1 at 3–9). But given the court's dismissal of all federal claims in the case, there is no longer an independent basis for jurisdiction over the Wyatts' state law claims against CMH Manufacturing, Warrior, and the fictitious defendants.

Accordingly, pursuant to 28 U.S.C. § 1367(c)(3), the court **WILL DECLINE** to exercise supplemental jurisdiction over these claims and **WILL REMAND** Counts One, Two Three, Four, and Five. The court **WILL DENY AS MOOT** CMH Manufacturing's and Warrior's motions for summary judgment as to the state law claims against them. (Doc. 37 at 11–24; doc. 38 at 17–30).

### III.  CONCLUSION

the court **WILL GRANT IN PART** and **WILL DENY IN PART** the motions for summary judgment before it. The court **WILL GRANT** CMH Manufacturing's and Warrior's motions for summary judgment as to the Magnuson-Moss Act claims against them (docs. 35–36), and **WILL ENTER SUMMARY JUDGMENT** in favor of CMH Manufacturing and Warrior as to those claims. To the extent the Wyatts assert Magnuson-Moss Act claims against fictitious defendants, the court **WILL DISMISS** those claims **WITHOUT PREJUDICE** for failure to sufficiently describe such fictitious defendants.

Because the court resolves the only claims over which it has original jurisdiction, the court **WILL DECLINE** to exercise supplemental jurisdiction over the Wyatts' state law claims against CMH Manufacturing, Warrior, and the fictitious defendants. The court **WILL REMAND** those claims to the Circuit Court of Tuscaloosa County, Alabama. And the court **WILL DENY AS MOOT**

CMH Manufacturing's and Warrior's motions for summary judgment on the state law claims. (Docs. 35–36).

Finally, because the grounds on which the court resolves this case do not depend on evidence from any experts, the court **WILL DENY AS MOOT** the motions to strike. (Docs. 50, 52).

**DONE** and **ORDERED** this March 11, 2025.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE